**Scharf-Norton Center for Constitutional Litigation at the
GOLDWATER INSTITUTE**
Jonathan Riches (025712)
Aditya Dynar (031583)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Goldwater Institute,<br><br>        Plaintiff,<br><br>    vs.<br><br>U.S. Department of Health and Human Services,<br><br>        Defendant. | No. CV-15-01055-PHX-SRB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT GENUINELY IN DISPUTE IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Fed. R. Civ. P. 56(e) and LRCiv. 56.1(b), Plaintiff hereby submits responses to the Defendant's Statement of Material Facts in Support of Defendant's Renewed Motion for Summary Judgment, (Doc. 78) ("DSMF"):

1.    The Center for Drug Evaluation and Research ("CDER"), U.S. Food and Drug Administration ("FDA"), U.S. Department of Health and Human Services ("HHS"), is the center within FDA that is responsible for regulating most human drugs and some biological products, including ZMapp. CDER also is responsible for, among other things, reviewing certain Investigational New Drug applications ("INDs") and expanded access INDs for treatment use, and reviewing and approving New Drug Applications ("NDAs") for drugs and Biologics Licensing Applications ("BLAs") for certain biological products. Dkt. 21-1 (Declaration of Nancy B. Sager ("First Sager Decl.")), ¶ 2.

**_Plaintiff's response_**: Undisputed.

2.    ZMapp is a biological product that is the subject of an active IND; there is no FDA-approved BLA for ZMapp. The existence of an IND file for ZMapp (the

"commercial IND") has been publicly disclosed by LeafBio, the sponsor of the application. Id., ¶ 3.

***Plaintiff's response***: Undisputed.

3.      When FDA's Division of Freedom of Information ("DFOI") receives a FOIA request seeking CDER records, it assigns the request to CDER's Division of Information Disclosure Policy ("DIDP"), Office of Regulatory Policy, for processing. DIDP is also responsible for proactively reviewing, redacting, and posting on FDA's website documents anticipated to be frequently requested, such as drug approval packages and warning letters. In addition, DIDP prepares for public release briefing materials for advisory committee meetings and responds to requests for CDER documents made by the U.S. Congress, foreign, state, and local governments, other federal agencies, and by third-party subpoenas and court orders. Id., ¶ 4.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

4.      At the direction of the Director of DIDP, DIDP personnel search records systems for documents under CDER's control to identify records and other information that may be responsive to FOIA requests. The timeframe for DIDP's search under its usual practice ends on the date on which it responds to a FOIA request. DIDP staff gathers and reviews documents that are potentially responsive to the FOIA request to determine whether, before being made available for public disclosure, they should be redacted in part or withheld in their entirety under any applicable FOIA exemption, or other statutory or regulatory provision. Id., ¶ 5.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact. Further, DSMF ¶ 4 is disputed if presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska v. Fed. Subsistence Bd.*, 544 F.3d 1089, 1095 (9th Cir. 2008) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

5.     The FOIA, which requires that federal agencies "make available to the public" certain information, 5 U.S.C. § 552, sets forth FDA's information disclosure obligations. FDA takes seriously its information disclosure obligations and broadly interprets the FOIA mandate. See generally 21 C.F.R. Part 20. Specifically, as set forth in 21 C.F.R. § 20.20(a), it is FDA policy to "make the fullest possible disclosure of records to the public, consistent with the rights of individuals to privacy, the property rights of persons in trade secrets and confidential commercial or financial information, and the need for the agency to promote frank internal policy deliberations and to pursue its regulatory activities without disruption." Id., § 20.20(a). Dkt. 21-1 (First Sager Decl.), ¶ 8.

*Plaintiff's response*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

6.     The FOIA carves out exemptions from an agency's disclosure obligations for certain categories of information. See 5 U.S.C. § 552(b). Among other things, the FOIA exempts from disclosure "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential." Id., § 552(b)(4) ("Exemption 4"). The FOIA also exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Id., § 552(b)(5) ("Exemption 5"). In addition, the FOIA exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id., § 552(b)(6) ("Exemption 6"). Dkt. 21-1 (First Sager Decl.), ¶ 9.

*Plaintiff's response*: DSMF ¶ 6 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095  ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452  ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

7.     In addition, the Federal Trade Secrets Act ("TSA"), which applies to all employees of the United States, including FDA employees, prohibits the disclosure of trade secrets and confidential commercial information (collectively, "CCI") unless otherwise authorized by law. 18 U.S.C. § 1905. Dkt. 21-1 (First Sager Decl.), ¶ 10.

*Plaintiff's response*: DSMF ¶ 7 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official

interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

8.      FDA's disclosure regulations applicable to all agency records are found in 21 C.F.R. Part 20. FDA's regulation implementing Exemption 4 provides that "[d]ata or information submitted to divulged to the Food and Drug Administration which fall within the definitions of a trade secret or confidential commercial or financial information are not available for public disclosure." 21 C.F.R. § 20.61. FDA's regulation implementing Exemption 5 provides that "[a]ll communications within the Executive Branch of the Federal government which are in written form or which are subsequently reduced to writing may be withheld from public disclosure except that factual information which is reasonably segregable . . . is available for public disclosure." Id., § 20.62. FDA's regulation implementing Exemption 6 provides that "[a] request for all records relating to a specific individual will be denied as a clearly unwarranted invasion of personal privacy unless accompanied by the written consent of the individual named." Id., § 20.63(e). Dkt. 21-1 (First Sager Decl.), ¶ 11.

*Plaintiff's response*: DSMF ¶ 8 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

9.      Under the Public Health Service Act ("PHSA"), 42 U.S.C. § 262, et seq., before any biological product may be introduced into interstate commerce, its sponsor must obtain FDA approval of a Biologics Licensing Application ("BLA") establishing that the product is safe, pure, and potent, and that the facility in which the product is manufactured, processed, packed, or held meets standards designed to assure its continued safety, purity, and potency. 42 U.S.C. § 262(a)(2)(C). However, the FDCA and applicable regulations contain an exemption from the preapproval requirements for drugs, including biological products, intended solely for investigational use, provided certain conditions are met. 21 U.S.C. § 355(i): 21 C.F.R. Part 312.

*Plaintiff's response*: DSMF ¶ 9 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095   ("No deference is owed when an agency has not formulated an official

interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

10.     There is a two-step process for obtaining FDA approval of a BLA. Dkt. 21-1 (First Sager Decl.), ¶ 12. In the first step, the product's sponsor gathers data about the product's safety, purity, and potency. It usually begins this process by performing a variety of laboratory and animal (pre-clinical) tests on the product. Id., ¶ 13.

*Plaintiff's response*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

11.     If the results of these tests are satisfactory, the sponsor conducts clinical investigations of the product. Prior to initiating such clinical investigations, however, the sponsor first must submit an IND to FDA and obtain FDA authorization to proceed with such clinical investigations. See 42 U.S.C. § 262(a); 21 C.F.R. Part 312. Dkt. 21-1 (First Sager Decl.), ¶ 13.

*Plaintiff's response*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

12.     FDA medical and scientific personnel ("reviewers") evaluate the data submitted in the IND. If the reviewers determine that the new drug does not pose an unreasonable or significant risk of illness or injury to human subjects, the agency will allow the clinical investigation to proceed. The reviewers also evaluate reports of the clinical investigations' progress as they are ongoing. Id.

*Plaintiff's response*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

13.     In certain situations, an investigational biological product sponsor or treating physician may submit an expanded access IND seeking FDA authorization to administer the product for treatment use, including in emergency situations. The criteria for authorizing such expanded access use and the information that must be submitted to support this type of IND are set forth at 21 U.S.C. § 360bbb and FDA regulations at 21 C.F.R. Part 312, Subpart I. An expanded access IND seeking FDA authorization to administer an investigational biological product to treat an individual in an emergency situation is referred to colloquially as an "eIND" or "compassionate use" IND. Dkt. 21-1 (First Sager Decl.), ¶ 14.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

14.     The expanded access provisions apply to patients with serious and/or immediately life-threatening diseases or conditions for which there is no comparable or satisfactory alternative therapy to diagnose, monitor, or treat the disease or condition. 21 C.F.R. § 312.300. The regulations describe the information that must be submitted to support this type of IND. Id., § 312.305. Pursuant to 21 C.F.R. § 312.305(b), when the submission is by a physician for treatment use, required information about the investigational biological product may be supplied by referring to pertinent information in the biological product sponsor's IND ("the commercial IND") if that sponsor grants a right of reference to its IND. Dkt. 21-1 (First Sager Decl.), ¶ 14.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

15.     For FDA to authorize expanded access use of an investigational biological product to treat an individual patient in an emergency situation, the criteria in 21 C.F.R. §§ 312.305(a) and 312.310 must be met. The patient's physician, inter alia, must determine that the probable risk to the patient from the biological product is not greater than the probable risk from the disease or condition and explain how the expanded access use will meet the requirements of sections 312.305(a) and 312.310(a). 21 C.F.R. §§ 312.310(a)(1), (d)(2). FDA must determine that the patient has a serious or immediately life threatening disease or condition; there is no comparable or satisfactory alternative therapy to treat the disease or condition; the potential benefit to the patient justifies the potential risks of the treatment use; those potential risks are not unreasonable in the context of the disease or condition being treated; providing the biological product will not interfere with the initiation, conduct, or completion of clinical investigations that could support marketing approval of the expanded access use or otherwise compromise the potential development of the expanded access use; and the patient cannot obtain the biological product under another IND or protocol. Id., §§ 312.305(a), 312.310(a)(2). If FDA makes such determinations and authorizes the IND to proceed, the investigational biological product may be administered to the patient, consistent with FDA's regulations providing for Institutional Review Board review and informed consent. Id., §§ 312.305(a), (d)(2)(i), 50.20, 56.103. Dkt. 21-1 (First Sager Decl.), ¶ 15; Dkt. 54-1 (Fifth Declaration of Nancy B. Sager ("Fifth Sager Decl.")), ¶ 4.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.  To the extent this statement reflects applicable legal and regulatory requirements, those regulations and laws speak for themselves.

16.    In the second step of the approval process for a biological product, the commercial IND sponsor submits to FDA a BLA, the formal application to obtain a license and marketing approval. 42 U.S.C. § 262(a); 21 C.F.R. Part 601. BLA files typically contain voluminous nonclinical and clinical research data that describe the investigations regarding the biological product's safety, purity, and potency, including information concerning pre-clinical and clinical trials under the IND and any expanded access INDs, manufacturing and other production information, FDA reviews of the data and other information, and internal FDA memoranda and other correspondence. For example, 21 C.F.R. § 601.2(a) requires submission, inter alia, of "data derived from non-clinical laboratory and clinical studies which demonstrate that the manufactured product meets prescribed requirements of safety, purity, and potency," a "full description of manufacturing methods," and "data establishing stability of the product through the dating period." Dkt. 21-1 (First Sager Decl.), ¶ 16.

*__Plaintiff's response__*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact. To the extent this statement reflects applicable legal and regulatory requirements, those regulations and laws speak for themselves.

17.    Agency reviewers evaluate the data in the BLA, which includes but is not limited to the BLA, to determine whether there is adequate evidence to satisfy the statutory and regulatory criteria for approval. If FDA determines that the application meets the statutory and regulatory requirements, it will approve the application and issue a biologics license for the product, thus authorizing the sponsor of that particular application to manufacture and market its product. 21 C.F.R. § 601.4(a); Dkt. 21-1 (First Sager Decl.), ¶ 17.

*__Plaintiff's response__*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact. To the extent this statement reflects applicable legal and regulatory requirements, those regulations and laws speak for themselves.

18.    FDA's regulations govern what information contained in INDs is available for public release and when. See 21 C.F.R. §§ 312.130, 601.50, 601.51. These regulations reflect FDA's "balance between the general statutory objective of releasing all records unless they are exempt and the specific statutory exemptions for trade secrets. Those records that do represent valuable commercial information, in that they provide a competitive advantage, will not be disclosed to the public." 39 Fed. Reg. 44602, 44,631 (Dec. 24, 1974). Dkt. 21-1 (First Sager Decl.), ¶ 18.

***Plaintiff's response***: DSMF ¶ 18 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact."). Further, Plaintiff addresses Defendant's litigation position (that its own regulations trump the statute) as unsupported by law in its Third Motion for Summary Judgment. Doc. 74 eps. 8–11.

19.     Under FDA's regulations, the information in INDs that may be disclosed publicly (and, therefore, in response to a FOIA request) depends upon the stage of agency review to which a BLA has progressed and the extent to which the information already has been made public. Dkt. 21-1 (First Sager Decl.), ¶ 19.

***Plaintiff's response***: DSMF ¶ 19 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy v. Ruckelshaus*, 738 F.2d 1448, 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

20.     FDA regulations expressly prohibit it from publicly disclosing the existence of an IND or an unapproved BLA unless the application's existence has previously been publicly disclosed or acknowledged, because such information is CCI. 21 C.F.R. §§ 312.130(a), 601.50, 601.51. Dkt. 21-1 (First Sager Decl.), ¶ 19; Dkt 35-1 (Supplemental Declaration of Nancy B. Sager ("Supp. Sager Decl.")), ¶ 4.

***Plaintiff's response***: DSMF ¶ 20 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738

F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

21.    Pursuant to 21 C.F.R. § 312.130(b), the availability for public disclosure of all data and information in an IND file for a biological product is governed by the provisions of 21 C.F.R. §§ 601.50 and 601.51. Section 601.50(a) reaffirms that FDA is prohibited from disclosing the existence of an IND for a biological product unless it has previously been publicly disclosed or acknowledged, and section 601.50(b) provides that the availability for public disclosure of all data and information in an IND file for a biological product is to be handled in accordance with the provisions in § 601.51. Section 601.51(c) states that, "[i]f the existence of a biological product file has not been publicly disclosed or acknowledged, no data or information in the biological product file is available for public disclosure." Section 601.51(d)(1) provides that, even "[i]f the existence of a biological product file has been publicly disclosed or acknowledged before a license has been issued, no data or information contained in the file is available for public disclosure before such license is issued," except under certain circumstances not applicable here. Dkt. 21-1 (First Sager Decl.), ¶ 19; Dkt. 35-1 (Supp. Sager Decl.), ¶ 4.

***Plaintiff's response***: DSMF ¶ 21 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact."). Further, Plaintiff addresses Defendant's litigation position (that its own regulations trump the statute) as unsupported by law in its Third Motion for Summary Judgment. Doc. 74 eps. 8–11.

22.    The public disclosure or acknowledgment required by FDA's IND regulations must be made in a lawful, i.e., authorized, manner, and it is incumbent on a FOIA requestor to bring to FDA's attention in its FOIA request information to show that a prior lawful disclosure or acknowledgment has been made. FDA may, but is not required to, conduct research in its normal course of business to determine whether such disclosure or acknowledgment has been made. Under 21 C.F.R. § 20.81(a), any FDA record that is otherwise exempt from public disclosure "is available for public disclosure to the extent that it contains data or information that have previously been disclosed in a lawful manner to any member of the public." (Emphasis added). With respect to an IND, including an expanded access IND seeking authorization to treat an individual with an investigational biological product in an emergency situation, such lawful disclosure or acknowledgment must be made by the sponsor of the subject IND or the sponsor's authorized representative. In general, a news report does not satisfy the public disclosure or acknowledgment requirements of 21 C.F.R. §§ 312.130(a), 314.430(b), 601.50, and 601.51, because its

1   basis is often unknown or unclear, and it could be based on speculation or fabrication. Dkt. 35-1 (Supp. Sager Decl.), ¶ 5; see Dkt. 21-1 (First Sager Decl.), ¶ 19.

2   ***Plaintiff's response***: DSMF ¶ 22 is disputed because it is presented as Defendant's

3   legal conclusion and litigation position. The Court owes no deference to, and cannot

4   accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d

5   at 1095 ("No deference is owed when an agency has not formulated an official

6   interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738

7   F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as

8   true simply because [litigant] characterized them as statements of fact.").

9   23.     Accordingly, if the existence of an IND has not been publicly disclosed or

10  acknowledged by its sponsor or the sponsor's authorized representative, FDA is prohibited from publicly acknowledging the existence of such an application; if the existence of an

11  IND has been publicly disclosed or acknowledged by its sponsor or the sponsor's authorized representative, with limited exceptions not applicable here, FDA is prohibited

12  from disclosing the contents of the IND file until it approves a BLA for the product. Dkt. 21-1 (First Sager Decl.), ¶ 19; Dkt. 35-1 (Supp. Sager Decl.), ¶¶ 4, 5.

13  ***Plaintiff's response***: DSMF ¶ 23 is disputed because it is presented as Defendant's

14  legal conclusion and litigation position. The Court owes no deference to, and cannot

15  accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d

16  at 1095 ("No deference is owed when an agency has not formulated an official

17  interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738

18  F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as

19  true simply because [litigant] characterized them as statements of fact.").

20  24.     Once a BLA has been approved, FDA regulations (21 C.F.R. §§ 601.51(e)

21  and (g)) permit it to make available to the public significant amounts of information about the product. Dkt. 21-1 (First Sager Decl.), ¶ 20.

22  ***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes

23  Defendant follows in responding to FOIA requests, and therefore has no basis to formulate

24  a response on whether this fact is disputed, if it is presented as fact.  To the extent this

25  statement reflects applicable legal and regulatory requirements, those regulations and laws

26  speak for themselves.

25.    FDA does not "approve" INDs as it does BLAs. Rather, in appropriate circumstances it "authorizes" or "permits" a sponsor to proceed with administering an investigational biological product. Consequently, FDA regulations providing that a significant amount of information from a BLA file is publicly available following approval do not apply to INDs following authorization, because at that time, the biological product is still in the investigational stage and has not yet been approved by FDA for its intended use. Accordingly, the material in an IND has the same status as material in an unapproved BLA: it is CCI and exempt from disclosure prior to approval of a BLA which relies on the information in it; when such a BLA is approved by FDA, certain information in the BLA file and, to the extent the IND has been incorporated by reference into the BLA, in the IND file, becomes publicly available. Dkt. 21-1 (First Sager Decl.), ¶ 21; Dkt. 54-1 (Fifth Sager Decl.), ¶ 5; see 21 C.F.R. §§ 601.51(e), (g).

***Plaintiff's response***: DSMF ¶ 25 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

26.    As set forth above, even if the existence of an IND or BLA has been publicly disclosed or acknowledged, FDA regulations expressly prohibit the agency from disclosing any data or information in an IND or BLA file before a biologics license is issued, except under certain circumstances not applicable here. FDA considers every record submitted to or generated by it in connection with its consideration of an application to be part of the application file. Such records include sponsor submissions concerning the application, which is the sponsor's CCI; correspondence with the sponsor regarding the application; minutes of telephone calls and/or meetings with the sponsor; and intra-agency (and potentially also inter-agency) correspondence, memos, scientific reviews, and other records relating to the handling and consideration of the application. Dkt 21-1 (First Sager Decl.), ¶ 22; Dkt 69-1 (Sixth Sager Decl.), ¶ 7.

***Plaintiff's response***: DSMF ¶ 26 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

27.     Title 21 C.F.R. § 601.51(a) provides that an IND file for a biological product "includes" certain information, such as "all data and information submitted with or incorporated by reference in any [BLA], IND's incorporated into any such application, master files, and other related submissions." Sponsor submissions, accordingly, and the other items listed are part of an IND file, but IND files are not limited to sponsor submissions and such other items. Thus, subpart (e) of that regulation, in addressing "the . . . data and information in the biological product file [that] are immediately available for public disclosure" following licensing (absent extraordinary circumstances), expressly includes, inter alia, "[a]ll correspondence and written summaries of oral discussions relating to the biological product file." 21 C.F.R. § 601.51(e)(6) (emphasis added). The dictionary definition of "correspondence" includes "communication by letters or e-mail." https://www.merriam-webster.com/dictionary/correspondence.

***Plaintiff's response***: DSMF ¶ 27 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

28.     FDA regulations, moreover, define an administrative file as "the file or files containing all documents pertaining to a particular administrative action, including internal working memoranda, and recommendations," and define an administrative action as including, with certain exceptions not applicable here, "every act . . . involved in the administration of any law by the Commissioner." 21 C.F.R. § 10.3(a). Although these definitions do not expressly apply to NDA, BLA, and IND files, they do apply to proceedings for revoking an NDA approval (21 C.F.R. Part 12). It would be illogical for the composition of an administrative file to differ depending on whether an approval (or authorization) is granted or withdrawn. Approval and revocation of approval of NDAs are administrative actions, as are authorizations of expanded access INDs.

***Plaintiff's response***: DSMF ¶ 28 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

29.     Consistent with these provisions, CDER's Program Records Control Schedule (i.e., its record retention schedule) treats all documents that were submitted to or generated by FDA in connection with the agency's consideration of an IND, BLA, or NDA as part of the application file. It identifies a broad range of documents as falling within the application file's scope. This broad range of documents "[i]ncludes" sponsor submissions; FDA notices; review comments; correspondence; meeting minutes; records of telephone conversations; and other related materials. Dkt 69-1 (Sixth Sager Decl.), ¶¶ 10-11 & Att. B at 1 (2100), 4-5 (2200).

**_Plaintiff's response_**: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact. Further, DSMF ¶ 29 is disputed if presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

30.     If such records were not considered part of an IND file and, therefore, were not protected under FDA's BLA and IND regulations (21 C.F.R. §§ 312.130, 601.50, 601.51), their release would disclose the existence of an IND, in contravention of FDA's regulations. Dkt 69-1 (Sixth Sager Decl.), ¶ 12.

**_Plaintiff's response_**: DSMF ¶ 30 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact."). Further, Plaintiff addresses Defendant's litigation position (that its own regulations trump the statute) as unsupported by law in its Third Motion for Summary Judgment. Doc. 74 eps. 8–11.

31.     On August 7, 2014, Plaintiff submitted its FOIA request to FDA. The request sought "[a]ny and all records that indicate the approval process, deliberations

13

made during that process, and final approval records regarding provision or approval of the drug and serum 'ZMapp' to be administered to Dr. Kent Brantly and Ms. Nancy Writebol, or any other individuals suspected to be infected with the Ebola virus, under the 'compassionate use' process or any other approval process at the FDA." Dkt. 21-1 (First Sager Decl.), ¶ 24; Dkt. 1-1 at 2.

   ***Plaintiff's response***: Undisputed.

32.   Following receipt of the request, DFOI referred the request to DIDP, because the request on its face sought information relating to ZMapp, a product regulated by CDER. Pursuant to its normal practice, DIDP staff examined the FOIA request and determined that Plaintiff sought records contained in and relating to INDs for ZMapp. Because FDA's regulations prohibit the agency from disclosing the existence of an IND that has not been publicly disclosed or acknowledged by its sponsor and further prohibit the agency from publicly disclosing any data or information in an IND before the agency approves a BLA, DIDP determined that there were responsive IND files based on a search of CDER's internal database, but DIDP did not undertake a broad search for records otherwise responsive to Plaintiff's FOIA request. Dk.t 21-1 (First Sager Decl.), ¶ 25.

   ***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

33.   On September 29, 2014, FDA denied Plaintiff's FOIA request because it sought trade secrets and confidential commercial information exempt from disclosure under FOIA Exemption 4 (5 U.S.C. § 552(b)(4)); 21 C.F.R. §§ 312.130(b), 314.430(d)(1), 20.61(b), (c); 45 C.F.R. § 5.65(c); and the TSA. Dkt. 21-1 (First Sager Decl.), ¶ 26; Dkt. 1-1 at 7-8.

   ***Plaintiff's response***: Undisputed.

34.   On October 23, 2014, Plaintiff appealed FDA's denial to HHS. It specifically disavowed seeking IND sponsor submissions and CCI relating to ZMapp, asserting that it was seeking only "records pertaining to the FDA's internal administrative review and approval process pertaining to the apparent dispensation of an experimental drug, 'ZMapp.'" Dkt 21-1 (First Sager Decl.), ¶ 27; Dkt. #1-1 at 11, 13 (emphasis in original).

   ***Plaintiff's response***: Undisputed.

35.   On February 19, 2015, HHS denied Plaintiff's FOIA appeal. It its denial letter, HHS explained that,

> FDA denied your request because ZMapp is still in the IND phase and has not been approved for marketing. Specifically, FDA's regulations at 21 C.F.R. 312.130 and 314.430 set forth what information in INDs can be disclosed to the public. These regulations generally prohibit the release of any data or information in an unapproved application, even if the existence of the application has been publicly disclosed by the

sponsor. Pursuant to 21 C.F.R. 312.130(b), the public disclosure of data and information in INDs is governed by 21 C.F.R. 314.430, which states that "[i]f the existence of an application . . . has been publicly disclosed or acknowledged before the agency sends an approval letter to the applicant, no data or information contained in the application . . . is available for public disclosure before the agency sends an approval letter." The product at issue here is not the subject of an approved New Drug Application (NDA), but rather the subject of an IND that is still undergoing review for approval. The language of the regulation expressly prohibits the release of any information in the application, . . . Dkt 21-1 (First Sager Decl.), ¶ 28; Dkt. #1-1 at 15-16.

*__Plaintiff's response__*: Undisputed as to the contents of HHS's February 19, 2015, but the letter itself is best evidence of such.

36.    The IND referenced in HHS's February 19, 2015 letter "that is still undergoing review for approval" was the commercial IND for ZMapp, whose existence previously had been disclosed by its sponsor, LeafBio. The commercial IND was the only IND whose existence HHS acknowledged because its existence had been publicly disclosed by its sponsor prior to February 19, 2015. Plaintiff never provided FDA any information to establish that there had been any prior lawful public disclosure or acknowledgment of an expanded access IND for use of ZMapp to treat Dr. Brantly, Ms. Writebol, or anyone else, either at the time it submitted its FOIA request or subsequently. Dkt. 21-1 (First Sager Decl.), ¶ 3; Dkt. 35-1 (Supp. Sager Decl.), ¶¶ 6, 7; see Dkt. 1-1 at 2, 11. Moreover, as set forth in SMF 25, FDA does not "approve" expanded access INDs for treatment of individuals in emergency situations, as it does a BLA; but, rather, it authorizes expanded access INDs to proceed.

*__Plaintiff's response__*: DSMF ¶ 36 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

37.    HHS also denied the appeal under the TSA; FOIA Exemptions 3, 4, 5, and 6; and 21 C.F.R. §§ 20.61, 20.62, and 20.63. Dkt. 21-1 (First Sager Decl.), ¶ 29; Dkt. 1-1 at 17-19.

*__Plaintiff's response__*: Undisputed.

38.    At the time CDER and HHS processed Plaintiff's FOIA Request, they mistakenly referred to 21 C.F.R. § 314.430, which applies to new drugs that are not

15

biological products. Because ZMapp is a biological product, FDA's regulations at 21 C.F.R. §§ 601.50 and 601.51 apply. The BLA regulations contain the same restrictions on disclosure of information in an IND as the NDA regulations in § 314.430. Dkt. 21-1 (First Sager Decl.), ¶ 30.

**_Plaintiff's response_**: Undisputed if presented as fact. DSMF ¶ 38 is disputed if presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

39.     In its February 19, 2014 letter, HHS directed Plaintiff to FDA's website, http://www.fda.gov/Drugs/DevelopmentApprovalProcess/HowDrugsareDevelopedandApproved/ApprovalApplications/InvestigationalNewDrugINDApplication/default.htm, for information regarding INDs. This website sets forth FDA's process for authorizing the various types of INDs, including expanded access INDs for emergency treatment such as those that are the subject of Plaintiff's FOIA request. This website also provides links to relevant statutory and regulatory provisions, including FDA's Final Rule, Expanded Access to Investigational Drugs for Treatment Use, 74 Fed. Reg. 40,900 (Aug. 13, 2009) (21 C.F.R. Part 312, subpart I), which was adopted to increase awareness and knowledge about expanded access programs and the procedures for obtaining investigational drugs for treatment use, including in emergencies (21 C.F.R. § 312.310); and FDA's Draft Guidance for Expanded Access to Investigational Drugs for Treatment Use – Qs & As (May 2013). Dkt. 21-1 (First Sager Decl.), ¶ 31.

**_Plaintiff's response_**: Undisputed if presented as fact. DSMF ¶ 39 is disputed if presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

40.     The FDA regulations referenced in the website describe the information that must be submitted to support an expanded access IND, the criteria that must be met to obtain FDA's authorization for use, and safeguards necessary to protect patients and

preserve the ability to develop meaningful data about use of the new drug product. These materials make clear that FDA may permit expanded access of a product for the treatment of an individual patient when the criteria in 21 C.F.R. §§ 312.305(a) and 312.310(a) are met. The criteria include a determination by the patient's physician that the probable risk to the patient from the investigational product is not greater than the probable risk from the disease (§ 312.310(a)(1)). They also include determinations by FDA that the patient has a serious or life-threatening disease or condition; no other comparable or satisfactory therapeutic options exist (§ 312.305(a)(1)); the potential benefit to the patient justifies the potential risks of treatment use; those risks are not unreasonable in the context of the disease being treated (§ 312.305(a)(2)); access to the investigational product will not interfere with development of the product (§ 312.305(a)(3)); and the patient cannot obtain the product under another IND or protocol (§ 312.310(a)(2)). Dkt. 21-1 (First Sager Decl.), ¶ 32.

***Plaintiff's response***: DSMF ¶ 40 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 (9th Cir. 2008) ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

41.    HHS's February 19, 2014 letter also referred Plaintiff to FDA's website at http://www.fda.gov/emergencypreparedness/counterterrorism/medicalcountermeasures/ucm410308.htm. This webpage states FDA's "strong[] support[ for] the establishment of clinical trials, which is the most efficient way to show whether [new drug products under development] actually work," but further states that, "[i]n the meantime, we also will continue to enable access to investigational products when they are available and requested by clinicians, using expanded access mechanisms, also known as 'compassionate use,' which allow access to such products outside of clinical trials when we assess that the expected benefits outweigh the potential risks to the patient." Id., ¶ 33.

***Plaintiff's response***: Undisputed; however, the website is the best evidence of its contents.

42.    After the Complaint in this case was filed (on June 9, 2015), the Deputy Director of DIDP and DIDP staff acting under his direction gathered and reviewed all documents potentially responsive to Plaintiff's FOIA request. DIDP's search identified three expanded access INDs for emergency treatment use of ZMapp that were authorized during the period covered by Plaintiff's FOIA request: one each for Dr. Kent Brantly and Nancy Writebol, who were specifically referenced in Plaintiff's FOIA request, and one for a third unidentified patient. Dkt 21-1 (First Sager Decl.), ¶ 34; Dkt. 54-1 (Fifth Sager Decl.), ¶ 6.

17

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

43.     After the Answer in this case was filed (on July 10, 2015), FDA became aware of a book written by Dr. Brantly, in which he publicly disclosed that he received one dose of ZMapp in Liberia and two at Emory University Hospital; an October 2, 2014 interview in which Ms. Writebol publicly disclosed that she received two doses of ZMapp in Liberia and a third at Emory; and a report, published in The New England Journal of Medicine in November 2014, concerning the clinical care of two Ebola patients at Emory. Dkt. 21-1 (First Sager Decl.), ¶ 38.

***Plaintiff's response***: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

44.     The report in The New England Journal of Medicine discusses the patients' treatment, including that they received ZMapp under "emergency investigational new drug approvals" from FDA. The physician-sponsor of the expanded access INDs for Dr. Brantly and Ms. Writebol and Dr. Brantly himself were among the report's authors. Based on the descriptions of the patients in the report and public statements made by Dr. Brantly and Ms. Writebol, it is readily apparent that they are the two patients in the report. Although the report does not mention the patients by name, it describes Patient 1 ("he") as a 33-yearold physician who had been working in Liberia," and Patient 2 ("she") as a "59-year-old female missionary who had been working in Liberia at the same facility as Patient 1," and "thank[s] Nancy Writebol and her family and the family of Kent Brantly." Id., ¶ 39.

***Plaintiff's response***: Undisputed if presented as fact. DSMF ¶ 44 is disputed if presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

45. Because the expanded access IND sponsor's public disclosure of the INDs' existence was lawful, FDA concluded that it could acknowledge the existence of those INDs. Further, Dr. Brantly and Ms. Writebol's public acknowledgement of their treatment with ZMapp in the United States obviated any concerns that FDA's disclosure of the

expanded access INDs would violate their personal privacy. FDA, accordingly, concluded that it could release to Plaintiff the two email authorizations with minimal redactions (the identity of a consultant, which is exempt under FOIA exemption 4, and a non-responsive email in the chain were redacted). FDA also concluded that the email authorizations were "available for public disclosure to the extent that [they] contain[] data or information that ha[s] previously been disclosed in a lawful manner to any member of the public." 21 C.F.R. § 20.81(a). The authorization emails (with the aforementioned minimal redactions) disclosed no information that had not been disclosed previously by the expanded access IND sponsor and the recipients of the treatment with ZMapp. FDA, accordingly, released the two emails on November 24, 2015. At that time, FDA could not disclose the existence of the third expanded access IND for emergency use of ZMapp or release the authorization record in the file for that IND, because the existence of that IND had not been publicly disclosed by its sponsor. Nor had the patient who was the subject of the IND publicly acknowledged having been treated with ZMapp. Dkt. 21-1 (First Sager Decl.), ¶¶ 19, 40; Dkt. 35-1 (Supp. Sager Decl.), ¶¶ 4-6; Dkt. 45-1 (Fourth Sager Decl.), ¶¶ 6-8, 10; Dkt. 54-1 (Fifth Sager Decl.), ¶ 7; Dkt 51-1 (Nov. 24, 2015 letter from FDA transmitting the Brantly/Writebol authorization records) at 56-58; SMF 21-23, supra; 21 C.F.R. §§ 312.130, 601.50, 601.51.

*__Plaintiff's response__*: DSMF ¶ 45 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

46.    In its transmittal letter on November 24, 2015, DIDP also produced to Plaintiff three additional documents describing the agency's general process for authorizing expanded access INDs for treatment of individuals in emergency situations that it located in a further search conducted after the Complaint and Answer were filed and that DIDP determined were responsive. These three records, together with the references provided to FDA websites with links to FDA's regulations information about the agency's process for authorizing expanded access INDs to treat individuals in emergency situations, provided Plaintiff with FDA's records regarding its process for authorizing investigational biological products to be administered for treatment use in emergency situations. Dkt. 21-1 (First Sager Decl.), ¶ 41; Dkt. 35-1 (Supp. Sager Decl.), ¶ 9; Dkt 51-1 (Nov. 24, 2015 letter) at 56, 59-80.

*__Plaintiff's response__*: DSMF ¶ 46 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official

interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

47.    Following the Court's June 16, 2016 Order requiring Defendant to submit a Vaughn index of withheld records (Dkt. 36), DIDP prepared two indices, the first for records relating to the Brantly and Writebol expanded access IND authorizations, and a supplemental index for records relating to the third expanded access IND. On August 18, 2016, Ms. Sager executed declarations – her third and fourth – to accompany each Vaughn index. The third declaration and accompanying Vaughn index were filed on August 19, 2016, together with a motion seeking to file the fourth declaration under seal for in camera review. Dkt. 39 & 39-1. The fourth declaration had attached to it the supplemental index of records relating to the third IND, so Defendant sought to file it under seal to comply with the June 16 Order requiring it to submit an index of withheld records without contravening FDA regulations that prohibited disclosing the existence of the third IND and any information in that IND file because its existence had not been publicly disclosed by its sponsor. FDA also was concerned, based on the dates of the records on the index, that Plaintiff and other members of the public would be able to identify the third patient, thereby violating that patient's personal privacy interests. See FOIA Exemption 6; 21 C.F.R. § 20.63. Although the third patient had publicly acknowledged having contracted Ebola, the third patient had not publicly disclosed having been treated with ZMapp. Dkt. 45-1 (Fourth Sager Decl.), ¶ 10; Dkt. 54-1 (Fifth Sager Decl.), ¶ 13.

***Plaintiff's response***: Undisputed regarding the timeline of the stated events. DSMF ¶ 47 is disputed to the extent it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

48.    On October 21, 2016, the Court denied Defendant's motion to file under seal. Dkt. 43. FDA interpreted the Order as requiring it to disclose information the agency was required to treat as confidential, see 21 C.F.R. § 20.83, and, on October 28, 2016, Defendant filed Ms. Sager's fourth declaration and supplemental index, publicly disclosing FDA's authorization of the third expanded access IND for emergency treatment of a patient with ZMapp. Dkt. 45-1 (Fourth Sager Decl.), ¶ 10; Dkt. 45-1 (Supp. Vaughn index) at 48; Dkt. 54-1 (Fifth Sager Decl.), ¶ 14. As a result of this public disclosure of the authorization, FDA concluded that the email authorization itself was "available for public disclosure," 21 C.F.R. § 20.81(a), and released it on November 14, 2016. Dkt 54-1 (Fifth Sager Decl.), ¶¶ 22 & Att. 1.

20

***Plaintiff's response***: Undisputed regarding the timeline of the stated events. DSMF ¶ 48 is disputed to the extent it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

49.    The two Vaughn indices prepared by DIDP staff under Ms. Sager's direction listed each withheld record with columns for the Bates-numbered page start and end, description, date/time, author, primary recipient(s), "cc" recipient(s), and reason for withholding. The indices described each withheld record and explained the bases for withholding. Dkt. 54-1 (Fifth Sager Decl.), ¶ 15; Dkt. 51-1 (Pl. Ex. 15) at 311.

***Plaintiff's response***: Undisputed as to the format of the *Vaughn*.

50.    In response to the Court's January 24, 2018 Order, Defendant revised and consolidated its two earlier indices. Because many of the records appeared in multiple email chains and thus appeared on the indices multiple times, Defendant's descriptions appeared to be overly duplicative. For example, four emails were listed more than 20 times, and 13 were listed between 10 and 17 times. See Dkt 69-2 (revised index). Defendant, accordingly, listed the emails on the revised index in chronological order to avoid any such misimpression and to better demonstrate the interrelationship of the emails and their relationship to FDA's consideration of the expanded access INDs. Dkt 69-1 (Sixth Sager Decl.), ¶ 4; see id., ¶ 5.

***Plaintiff's response***: Undisputed as to the format of the *Vaughn*.  DSMF ¶ 50 is disputed to the extent it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

51.    In the process of preparing the revised index, FDA discovered several short emails that were in email chains listed on the earlier Vaughn indices but that it inadvertently had overlooked when it prepared the earlier Vaughn indices and so added

them in the revised index; corrected some errors in description, date, and time of emails listed on the earlier Vaughn indices; and reconsidered the responsiveness of some of the emails it previously had designated non-responsive. Id., ¶ 6.

*Plaintiff's response*: Plaintiff lacks knowledge about the internal processes Defendant follows in responding to FOIA requests, and therefore has no basis to formulate a response on whether this fact is disputed, if it is presented as fact.

52.    For every document listed on the revised index, including those that Defendant considered to be nonresponsive to Plaintiff's FOIA request in the event the Court were to find them responsive, Defendant asserted the exemption(s) upon which it relied, and elaborated upon the bases for withholding in Ms. Sager's sixth declaration. See Dkt 69-1 (Sixth Sager Decl.), ¶¶ 5, 7-12; Dkt 69-2 (revised index).

*Plaintiff's response*: Undisputed if presented as fact. DSMF ¶ 52 is disputed if it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

53.    Plaintiff challenges FDA's withholding of 60 emails listed on the revised index. Almost all of these emails were sent by the commercial and expanded access IND sponsors to FDA or by FDA to them, or were internally generated and circulated between and among the expanded access IND reviewers, in connection with FDA's consideration of the three expanded access INDs at issue. See Dkt 69-2 (revised index). A handful of the emails on the revised index (Lines 82-83, 85-86) were between a foreign treatment provider holding ZMapp and the commercial IND sponsor, and were forwarded to FDA for consideration after the sponsor agreed to provide ZMapp for emergency treatment of the third patient. All 60 emails, which bear on, and were generated by or submitted to FDA in connection with its consideration of the expanded access INDs, are part of the application files. This is equally true with respect to the emails that FDA considered responsive to Plaintiff's FOIA request and those that it withheld as nonresponsive but listed on the revised index because they are in email chains that contain responsive emails. Dkt 69-1 (Sixth Sager Decl.), ¶¶ 5, 7-12.

*Plaintiff's response*: DSMF ¶ 53 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d

at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

54.     Because the 60 emails are part of an IND file, Defendant is not required to address segregability of any factual information contained therein pursuant to the Court's Order of January 24, 2018 (Dkt 66 at 12). Nonetheless, as set forth in Ms. Sager's fifth declaration and as is apparent from the more robust descriptions and grounds for withholding set forth on the revised index, any factual information in the 60 records whose withholding Plaintiff challenges is not reasonably segregable.

**_Plaintiff's response_**: DSMF ¶ 54 is disputed because it is presented as Defendant's legal conclusion and litigation position. The Court owes no deference to, and cannot accept as true, the Defendant's legal conclusions or litigation position. *Alaska*, 544 F.3d at 1095 ("No deference is owed when an agency has not formulated an official interpretation of its regulation, but is merely advancing a litigation position."); *Kilroy*, 738 F.2d at 1452 (9th Cir. 1984) ("district court [i]s not obligated to accept [litigant's] legal conclusions as true simply because [litigant] characterized them as statements of fact.").

**RESPECTFULLY SUBMITTED** this 11th day of September, 2018 by:

__/s/ Aditya Dynar_____
Jonathan Riches (025712)
Aditya Dynar (031583)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
*Attorneys for Plaintiff*

1

**CERTIFICATE OF SERVICE**

2

Document Electronically Filed and Served by ECF and Copies sent via e-mail

3

this 11th day of September, 2018 to:

4

5

Peter M. Lantka
U.S. Attorney's Office
Two Renaissance Square

6

40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004

7

Peter.lantka@usdoj.gov

8

Leslie Cohen
U.S. Dept. of Health & Human Svcs.

9

Office of the General Counsel
Food and Drug Admin.

10

10903 New Hampshire Ave.
WO Bld. 32, RM 4301

11

Silver Spring, MD  20993

12

Leslie.cohen@fda.hhs.gov

13

14

_____/s/ Kris Schlott_____

Kris Schlott

15

16

17

18

19

20

21

22

23

24

25

26

27

28